ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 18 2013

at 4 o'clock and 40 min. PM
SUE BEITIA, CLERK

**BRIAN EVANS**

General Delivery

Keaau, Hawaii 96749

(617) 599-5040

riveravenue@hotmail.com

    Plaintiff, Pro Se

                                            CIVIL NO. 13-00269 SOM/KSC

vs.

                                            FIRST AMENDED COMPLAINT

**THE LEAPFROG GROUP,**

1660 L Street NW, Suite 308

Washington, DC 20036,

    Defendant

**LEAH BINDER, Individually and in her Official Capacity as CEO of LEAPFROG GROUP**

1660 L Street NW, Suite 308

Washington, DC 20036,

    Defendant

**Robert Wood Johnson Foundation**

Route 1 and College Road East

Princeton, NJ 08543-2316,

    Defendant

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT FOR FRAUD, NEGLIGENT MISREPRESENTATION, CORRUPTION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, WRONGFUL DEATH, LOSS OF CONSORTIUM, LOSS OF LOVE, AND FALSE ADVERTISING UNDER THE LANHAM ACT

Plaintiff, Brian Evans (in Pro Se), files this Complaint against The LeapFrog Group and Leah Binder, herein referred to as "Defendants," for Fraud, Negligent Misrepresentation, Corruption, Intentional Infliction of Emotional Distress, Loss of Consortium, Loss of Love, False Advertising, and Wrongful Death of Plaintiff's mother, Helen Marie Bousquet.

### PRELIMINARY STATEMENT

1. In August, 2012, Plaintiff's mother, Helen Marie Bousquet, decided to go to The Holy Family Hospital, a Steward Health Care System hospital, based on the rating provided by The LeapFrog Group, who rated the hospital an "A."

2. On October 5th, 2012, Plaintiff's mother (Plaintiff is her only son) died following a routine knee operation when the hospital placed her in an unmonitored recovery room, dosed her out on morphine, and left her there to die despite knowing before she even walked into the hospital that she had a condition known as Sleep Apnea.

3. Approximately two weeks later, nurses for the hospital protested the hospital for lack of staff. Over 1,000 nurse complaints have been filed with its parent company, Steward Health Care System, for lack of staffing and unsafe staffing conditions in the past one year. There is no way this hospital could possibly have received an "A" rating, under these circumstances, and had LeapFrog actually spoken to the employees or hospital it then rates.

4. Following the passing of Helen Bousquet, at 62, Plaintiff contacted The LeapFrog Group to question this rating. The LeapFrog Group then contacted Plaintiff to offer him condolences, and telephoned him seemingly irate over the matter, and told Plaintiff that he should "go after the hospital" for what they did. Plaintiff asked Leah Binder, co-defendant, to provide Plaintiff with a letter confirming their stance on the matter (**Exhibit A**). While the letter was far different than telephone call Binder had on the telephone with Brian Evans and Mark Biltz (Plaintiff's friend whom Ms. Binder knew was on the phone), Ms. Binder then invited Plaintiff to her office to discuss his mothers matter, communicating to the Plaintiff "Your mother would want us to talk."

5. In an effort to bring awareness to what happened to his mother, Plaintiff went public with the letter provided to LeapFrog Group. (**Exhibit B**)

6. Irate that Plaintiff went public with the letter referenced as Exhibit A, LeapFrog Group stopped communicating with Plaintiff, rescinded the invitation to meet, and days later awarded the hospital with a new "A" rating (**Exhibit C**), despite never having walked through the doors of the hospital in between the time it had sent the letter to Plaintiff as referenced in Exhibit A, and providing the hospital with the new "emergency rating," given Plaintiff's public announcement of what appeared to be their support of Plaintiff's actions. This despite co-defendant Leah Binder's statement in Exhibit A that she had yet to even receive the 2012 data yet (paragraph 4, Exhibit A). Suddenly, that date magically arrived.

## PARTIES

Brian Evans, a Resident of Hawaii

Leah Binder, a Resident of Maryland

The LeapFrog Group, Washington, DC

## JURISDICTION

This Honorable Court has subject jurisdiction over this matter under Diversity, 28 USC 1332 as the matter is between parties from different states and exceeds $75,000 in claim.

Venue is proper given Plaintiff is the only son of the victim in this case, and is also alleging Intentional Infliction of Emotional Distress, Loss of Consortium, Loss of Love, all of which is being suffered by Plaintiff here in Hawaii, where he resides. Plaintiff's mother also resided with him in Hawaii, and maintained a vacation home in New Hampshire which was the cause of having this surgery in that area while Plaintiff was there on a work assignment.

The United States Supreme Court determined in Erie Railroad Co. v. Tompkins (1938) that the law applied in a diversity case would be the law of whatever state in which the action was filed. In LeBlanc v. Cleveland, 248 F.3d 95 (2nd Cir. 1999), it is stated that Diversity is determined at the time that the action is filed, and on the basis of the residency of the parties at that time. A change in domicile by a party before or after that date is irrelevant, if Plaintiff's residency is in question. Plaintiff is a resident of Hawaii and maintains Hawaii state identification (**Exhibit D**).

Under article III of the Constitution, federal courts can hear "all cases in law and equity arising under this Constitution and laws of the United States."

Defendants have numerous contacts with the State of Hawaii, in that it also "rates" hospitals in this state (**Exhibit E**). Kaiser is one of, if not the most, largest healthcare organization in Hawaii.

**FACTUAL ALLEGATIONS**

Plaintiff, Brian Evans (in Pro Se), files this Complaint against The LeapFrog Group and Leah Binder, herein referred to as "Defendants," for Fraud, Negligent Misrepresentation, Corruption, Intentional Infliction of Emotional Distress, Loss of Consortium, Loss of Love, False Advertising, and Wrongful Death of Plaintiff's mother, Helen Marie Bousquet.

**PRELIMINARY STATEMENT**

1. In August, 2012, Plaintiff's mother, Helen Marie Bousquet, decided to go to The Holy Family Hospital, a Steward Health Care System hospital, based on the rating provided by The LeapFrog Group, who rated the hospital an "A." Believing that rating actually meant something, it ended up being the mistake of her life, and which helped to end it.

2. On October 5th, 2012, Plaintiff's mother (Plaintiff is her only son) died following a routine knee operation when the hospital placed her in an unmonitored recovery room, dosed her out on morphine, and left her there to die despite knowing before she even walked into the hospital that she had a condition known as Sleep Apnea.

3. Approximately two weeks later, nurses for the hospital protested the hospital for lack of staff. Over 1,000 nurse complaints have been filed with its parent company for lack of staffing and unsafe staffing conditions in the past one year. There is no way this hospital could possibly have received an "A" rating, under these circumstances.

4. Following the passing of Helen Bousquet, at 62, Plaintiff contacted The LeapFrog Group. The LeapFrog Group then contacted Plaintiff to offer his condolences, and telephoned him seemingly irate over the matter, and told Plaintiff that he should "go after the hospital" for what they did. Plaintiff asked Leah Binder, co-defendant, to provide Plaintiff with a letter confirming their stance on the matter (**Exhibit A**). Ms. Binder then invited Plaintiff to her office to discuss his mothers matter, communicating to the Plaintiff oddly, "Your mother would want us to talk."

5. In an effort to bring awareness to what happened to his mother, Plaintiff went public with the letter provided to LeapFrog Group. (**Exhibit B**)

6. Irate that Plaintiff went public with the letter referenced as Exhibit A, LeapFrog Group stopped

communicating with Plaintiff, rescinded the invitation to meet, and days later awarded the hospital with a new "A" rating (**Exhibit C**), despite never having walked through the doors of the hospital in between the time it had sent the letter to Plaintiff as referenced in Exhibit A, and providing the hospital with the new "emergency rating," given Plaintiff's public announcement of what appeared to be their support of Plaintiff's actions.

7. Plaintiff later was advised, by Leah Binder of The LeapFrog Group, that it had never even stepped foot into the hospital in question, The Holy Family Hospital, in Methuen, Massachusetts. In fact, it has never stepped foot into a hospital here in Hawaii either, "rating" the hospital based on questionnaires they mail to the hospitals, that the hospitals answer themselves, and practically (if not all) every other hospital in the nation that it rates. The questionnaires are unchecked by anyone. The rating is based solely on the answers the very hospitals they rate provide in those questionnaires. This gives patients, especially older patient's, the false sense of security that the hospital's the Defendants are rating are safer than they actually are. The American Hospital Association has come out vehemently against The LeapFrog Group for their false and misleading representations that falsely provide credibility to the public at large to hospitals that do not deserve it.

In fact, nurses for this very hospital protested their own hospital for lack of safety standards, just days before LeapFrog gave their latest "A" rating to that very hospital, and right after providing the Plaintiff with a letter supporting his efforts (only rescinding that support when Plaintiff went public). (**Exhibit F**)

The American Sleep Apnea Association, the only national organization that deals with Sleep Apnea and it's deadly effects, fully supports Plaintiff in his efforts, and also makes clear that the lack of safety, despite LeapFrog's "A" rating, led to her untimely and unnecessary death. (**Exhibit G**).

**FIRST CLAIM**

### (Fraud)

Defendants provided The Holy Family Hospital with an "A" rating. Plaintiff challenged the rating publicly. Given the notoriety this case has garnered in Massachusetts (State Senator Bruce Tarr is proposing new legislation in this state as a direct result of what happened to Plaintiff's mother), LeapFrog Group attempted to "side with the Plaintiff" in their letter. Plaintiff went public with that letter, the hospital didn't like that, and suddenly Plaintiff was ignored, the hospital got their new rating despite advising Plaintiff that 2012 data hadn't even been received yet, and nurses then protested the same hospital for lack of patient safety policies (which is another reason the hospital could not have possibly received an "A" rating). The letter by LeapFrog to Plaintiff was meant to put him at bay while they figured out what to do with him given what a "public stink" Plaintiff made. This is the Plaintiff's mother we are discussing. Nothing was going to be left unturned in seeking justice for her. A "public stink" is the least he could do after all she has done for Plaintiff.

### SECOND CLAIM

### (Negligent Misrepresentation)

The Defendants rate hospitals they do not walk into. This provides a false impression to patients nationwide that these hospitals are safer than they are. If an old person (and Plaintiff's mother was not old) walks into a hospital they believe is "A" rated, it is giving them the false perception that they are going to walk out of there because it's "A" rated, and therefore, by LeapFrog standards, one of the safest in the nations. That didn't happen. Plaintiff's mother went into that hospital for an elective knee surgery, and came out headed to a crematory.

Plaintiff believes the only standard is that the payment of fees are made to them on time.

### THIRD CLAIM

### (Corruption)

Partially funded by co-Defendant Robert Johnson Wood Foundation, The LeapFrog Group, as discovery will show, is a corrupt organization who is paid fees by the very hospitals that they rate, and who issue new ratings on a whim if one of its paying hospitals doesn't like it when the Defendants support someone against them. When an organization becomes angry with them, as Steward Health Care System's did when Plaintiff went public with LeapFrog's letter, the hospital got a brand new updated rating, despite LeapFrog's own assertions in their letter (Exhibit A) that stated they hadn't even received 2012 data yet, but suddenly found that data when Plaintiff went public with her letter. That rating was likely "on the house" given the anger instilled by Plaintiff going public with their letter to him. This is corrupt, it is national with this organization, and the false ratings are happening in every state in this nation, including right here in Hawaii.

### FOURTH CLAIM

### (Intentional Infliction of Emotional Distress, Loss of Consortium, Loss of Love)

Plaintiff, Brian Evans, has been shattered by this loss. Plaintiff himself, when researching this hospital, was also bamboozled by LeapFrog's false rating. If Plaintiff knew then what he knows now, his mother would have never walked through those hospital doors. At just 62, Helen Marie Bousquet was entering a phase of joy in her life that she had never had. Plaintiff has been in grief therapy two to three times per week just in order to keep himself alive through this ordeal. Plaintiff's "high" in his career of being the first solo artist in history to film a music video at Fenway Park, home to The Boston Red Sox, which his mother is featured in, was followed by the worst "low" imaginable just one week later, when in part due to Defendants, she died in that hospital under a belief that it was safer than it was, despite this rating company never having walked through the door to the hospital when "rating" it.

Plaintiff completely shut down on every level emotionally, debt accrued, he couldn't leave his house (and on most occasions, his bed), and initiated actions by The Joint Commission, and then US-Senator John Kerry initiated an investigation by the Board of Medicine (**Exhibit H**). Massachusetts State Senator Bruce Tarr has met with Plaintiff now three times over this matter, and is working to propose new legislation over what happened to Helen Marie Bousquet, Plaintiff's mother. They don't propose new law if something terrible didn't happen. Every US Governor has issued, or is issuing, a Proclamation to bring attention to the condition known as Sleep Apnea (only Massachusetts has declined, who just appointed a Steward Health Care executive to head up it's DPH).

What happened to Plaintiff's mother should not have happened. Living with allowing her to go there under the false pretenses of LeapFrog Group has been utterly shocking, at times personally life-threatening, to Plaintiff. In short, Plaintiff has been hanging by a very thin thread but keeps going because of the legacy he must not allow his mother to be denied. It was her that brought this to national attention (Oscar winning actor Tom Hanks introduces her website at helenbousquet.com). Plaintiff did not want this to be his mother's purpose, but if that's what it now has to be, outside of the great mother that she has been, he intends to make sure that's exactly what it is. Plaintiff intends to see to it that his mother did not die for nothing. Not for some personal reason, but for a reason that is right, true, and should never happen to anyone else.

### FIFTH CLAIM

### (False Advertising)

Plaintiff also claims that under The Lanham Act (Section 43a), that Defendants are falsely advertising, while claiming non-profit status, ratings to hospitals that they do not walk into while accepting fee's from the very hospitals they rate. "To demonstrate falsity, a claimant generally must show either: (1) that the statement is literally false, or (2) that although literally true, the statement is likely to mislead,

confuse, or deceive consumers (8)." Plaintiff believes he can meet all of these requirements. When LeapFrog provides a glowing rating to a hospital it hasn't even walked into, it's misleading to say the least.

**CLAIM PERTAINING TO THE ROBERT JOHNSON WOOD FOUNDATION**

Plaintiff believes co-Defendant Robert Johnson Wood Foundation to be equally culpable in these claims, as it is a major contributor to LeapFrog Group's activities. While various 501(c) "organizations" claim non-profits status, their executive pays clearly confirm they are anything but non-profit. One should not be permitted, in the interests of public safety, to behave as the Defendants have while claiming to be non-profit and looking out for the public. Plaintiff believes the Defendants are not non-profit, and are clearly not looking out for the public when it doesn't even walk into to a hospital to meet a member of it while providing them "A" ratings on a whim, as they did in this case and as is exhibited throughout it.

**CONCLUSION**

Helen Marie Bousquet chose The Holy Family Hospital in Methuen, Massachusetts due to the worthless rating of The LeapFrog Group, who never even stepped foot into the hospital, who in writing advised Plaintiff they hadn't received "data" from 2012, but who just weeks after Plaintiff went public with the letter from LeapFrog, suddenly received all the data they needed and provided the hospital with a brand new expedited rating just days later. The rating is a total sham, and it cost Helen Bousquet her life. This case can't bring Helen Bousquet back, but what it can do is make sure her sacrifice was to bring something like this to light, and to prevent this sort of conduct from happening again. There is a national public issue here. A hospital who relies upon a rating from a company like LeapFrog will always get the best rating money can buy when the rating companies don't even walk into the hospital. People like my mother had a different illusion, and LeapFrog did nothing to make sure it was crystal clear in terms of how they came to come to that rating. Older people assume they scouted the place. They don't. All they

do is mail the hospital a questionnaire that the hospital completes, mails back, and presto: A rating. They admittedly never even walk into the place.

Common sense dictates that when a patient, especially one that doesn't know better, hears this "big national non-profit organization" has given them an "A" rating, that this normal patient just believes the right thing is being done. I highly doubt any patient would ever believe an organization that rates a hospital never actually walks into the place. I could say to Your Honor that I am the best human being on the planet, because I said so. That's exactly, not essentially, but exactly, what this the Defendants and the Robert Johnson Wood Foundation are up to. It's wrong. The American Hospital Association agrees, but no one does anything about it and people continue to be misled, as Plaintiff's mother was. Someone needs to speak out about this, and in this case, Plaintiff is merely the messenger.

It was Helen Marie Bousquet who was likely choking to death in that unmonitored recovery room at The Holy Family Hospital despite the hospital knowing she had sleep apnea, who deserves her day in court in an unbiased state who should have the same concerns about these allegations as the Plaintiff. In fact, it was one of the very doctor's who cleared her for this surgery who prescribed her a CPAP (a sleep apnea machine sleeping device) for her home use. There was simply nothing "A" rated about this hospital. The American Hospital Association also has grave concerns about LeapFrog Group (Exhibit J). A simple heart monitor in Plaintiff's mother room, something that costs $80, could have saved her life. By LeapFrog standards, protesting nurses, no telemetry in the hospital rooms, that gets you an "A" in their book, especially if you have woman's son kicking and screaming about it as much as I have.

Finally, Plaintiff realizes he has filed several actions in this court. Plaintiff did not simply awaken one day and decide to do so for the fun of it. This is my mother this happened to. She was only 62 and fine before the lot of vultures took advantage of her naivety. Encompassing the above claims, the Plaintiff believes his mother would be alive today had it not been for the false advertising and other elements

stated above of these Defendants.

Plaintiff Prays this Honorable Court will grant him the latitude of a Pro Se litigant.

**RELIEF**

Plaintiff files suit seeking $25 million, and damages as allowed by law, to be distributed to causes and charities his mother would have wanted.

_____

BRIAN EVANS

June 13th, 2013