cc: Som/Bmk/filer

ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 01 2013

at 4 o'clock and 30 min. P.M.
SUE BEITIA, CLERK

BRIAN EVANS, Individually

General Delivery

Keaau, Hawaii 96749

(617) 599-5040

riveravenue@hotmail.com

 Plaintiff, Pro Se

v.

THE LEAPFROG GROUP,

1660 L Street NW, Suite 308

Washington, DC, 20036

 Defendant,

LEAH BINDER, Individually and in her Official Capacity as CEO of The LeapFrog Group,

1660 L Street NW, Suite 308

Washington, DC, 20036,

 Defendant,

ROBERT WOOD JOHNSON FOUNDATION

Route 1 and College Road East

Princeton, NJ 08543-2316,

 Defendant

<u>CIVIL NO. 13-00269-SOM-KSC</u>

**SECOND AMENDED COMPLAINT**

## SECOND AMENDED COMPLAINT CLAIMING FRAUD, WRONGFUL DEATH, CONSPIRACY TO COMMIT FRAUD, CORRUPTION, NEGLIGENT MISREPRESENTATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, LOSS OF CONSORTIUM, LOSS OF LOVE

### JURY TRIAL DEMANDED

Plaintiff, Brian Evans (in pro se) files this Second Amended Complaint against all named Defendants above for FRAUD, WRONGFUL DEATH, CONSPIRACY TO COMMIT FRAUD, CORRUPTION, NEGLIGENT MISREPRESENTATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, LOSS OF CONSORTIUM, LOSS OF LOVE.

### PARTIES

Brian Evans, a Resident and Citizen of Hawaii, Plaintiff

The LeapFrog Group, a company located in, and doing business in, Washington, DC, Defendant

Leah Binder, a resident and citizen of Washington, DC and Maryland, Defendant

The Robert Wood Johnson Foundation, a company located, and doing business in, Princeton, NJ, Defendant

### JURISDICTION

This Honorable Court has subject jurisdiction over this matter under Diversity, 28 USC 1332 as the matter is between parties from different states and exceeds $75,000 in its claims.

Venue is proper given Plaintiff is the only son of the victim in this case, now the administrator of her Estate, but for the purposes of this Complaint is acting in his individual capacity as the son of Helen M. Bousquet, the victim. Plaintiff is also alleging Intentional Infliction of Emotional Distress as it relates to this matter, as some elements of that infliction has only come to light recently, and within the past two months after numerous grief therapy sessions revealed itself to be so.

Plaintiff is a resident and full time citizen of the state of Hawaii and maintains Hawaii state ID (**Exhibit A**). He does not live anywhere else. He is a not a citizen of anywhere else. He does not seek work anywhere else.

The United States Supreme Court determined in Erie Railroad Co. v Tompkins (1938) that the law applied in a diversity case would be the law of whatever state in which the action is filed.

*In Leblanc v. Cleveland, 248 F.3d 95 (2nd Cir. 1999), it is stated that Diversity is determined at the time that the action is filed, and on the basis of the residency of the parties at that time.* A change in domicile by a party before or after that date is irrelevant, if Plaintiff's residency is indeed in question. Plaintiff is a resident and citizen of Hawaii.

Plaintiff's entire life has been based in Hawaii for more than a decade, leaving only for occasional employment as an entertainer.

Under article III of the Constitution, federal courts can hear "all cases in law and equity arising under this Constitution and laws of the United States."

In addition, the Defendants have numerous contacts with the State of Hawaii, in that they rate hospitals in this state, which Plaintiff believes the Defendants also do fraudulently (**Exhibit B**).

## STATEMENT OF CLAIM

Plaintiff, Brian Evans, files this Complaint against the Defendants for issuing "Ratings" to hospitals, which patients such as his mother relied on, in choosing a hospital to have surgery in. However what is not provided to patients like Plaintiff's mother, is the information that the rating is provided without LeapFrog ever walking into the hospitals they rate. This gave the Plaintiff's mother the false impression that the hospital was safer than it was. It's fraud, and the conspiracy to commit fraud between the Defendants is corrupt in its intent to "get paid for ratings," because a higher rating equals more money

from Medicare to the hospitals they rate, and it becomes a payment worth making if you're a hospital despite the lie that it is to patients who go to this hospital based on a rating that is meaningless (**See Exhibit C**). The rating is misleading to patients, and the formula in creating that rating is more of a corrupt scheme for the hospital to obtain federal funds than it is patient safety. LeapFrog, knowing this, is able to charge a hospital whatever it would like for that "A" rating, as they know it's a rating the hospital needs in order for them to receive vast sums of Medicare funding.

Plaintiff's claim that had his mother not relied on this fraudulent and fictitious rating, then Plaintiff's mother would not have chosen this hospital to have her surgery in and she would be alive today.

Plaintiff's claim is that his mother died as a result, in part, of the LeapFrog rating that was completely bogus, unreliable, and fraudulent to begin with. Had Plaintiff's mother not relied on that false, misleading, and fraudulent rating, she would not have chosen the hospital that she did.

## **PRELIMINARY STATEMENT**

1. On or about August, 2012, Plaintiff's mother, Helen Marie Bousquet, decided to go to The Holy Family Hospital, a Steward Health Care System Hospital, owned by Cerberus Capital Management, because she learned that it was "A" rated by LeapFrog Group. Plaintiff and Plaintiff's mother both believes that LeapFrog personally attended the hospital, assuming that this was how a rating was obtained. No disclaimer in any hospital materials indicated otherwise, and the perception that LeapFrog Group was "hands on" is promoted throughout their website and advertisements.

2. On October 5th, 2013, Plaintiff's mother died following a routine knee operation when the hospital placed her in an unmonitored recovery room, dosed her out on morphine, and left her there to die despite knowing before she even walked into the hospital, whom LeapFrog provided an "A" rating, despite knowing that she had a condition known as "Sleep Apnea." The

American Sleep Apnea Association, familiar with the case, has come out to support the Plaintiff in his claims (**Exhibit D**).

3. Approximately two weeks later, nurses for the hospital, whom LeapFrog provided an "A" rating, protested the very hospital Ms. Bousquet died in stating there were not enough nurses to care for the patients. More than 1,000 complaints were filed by the nurses against their employers, Steward Health Care System, and even still, this apparently warranted an "A" rating by the Defendants in this case (**Exhibit E**).

4. Following the passing of Helen Bousquet, at just 62, Plaintiff contacted The LeapFrog Group. The LeapFrog Group and it's CEO, co-defendant Leah Binder, contacted him on a Saturday afternoon after receiving numerous emails by Plaintiff, and told him to "go after the hospital for what they did." Plaintiff then requested that he would like Ms. Binder to "put that it in writing." Despite what Binder wrote being very different than the phone call they had just two days before, co-Defendant Binder did so (**Exhibit F**).

5. In an effort to bring awareness to what happened to his mother, Plaintiff went public with the letter provided by LeapFrog Group and co-defendant Leah Binder.

6. Irate that the Plaintiff went public with the letter, co-Defendant Binder retracted an earlier telephonic invitation to meet with her, stopped communication with the Plaintiff, and days later issued a "new A rating" to the hospital (**Exhibit G**), despite stating in her own letter to Plaintiff in Exhibit F that she had yet to even receive data from the 2012 hospital information she based her ratings of hospitals on. Numerous physicians in Boston, including the American Hospital Association, have claimed that this is typical behavior of LeapFrog and co-defendants (**Exhibit H**)

7. Plaintiff and Plaintiff's mother would not have chosen the "A" rated hospital had it not been for the false and misleading representations by LeapFrog Group (and co-defendants), and the false rating led to the death of Helen Bousquet, as she wouldn't have chosen this hospital had it not

been for believing in that misleading, false, and financially-induced rating that LeapFrog supplied to the hospital. Actions by co-Defendant Binder will further be proven to be fraudulent, and with the intent to deceive patients such as Plaintiff and Plaintiff's mother. Co-Defendants actions of calling Plaintiff, writing Plaintiff a letter of support, retracting the support when Plaintiff went public, then immediately issuing a new "A" rating despite her own admissions that 2012 data wasn't available, are actions taken by someone with something to hide and to protect. Herself and her company.

## COUNT ONE

### (Fraud)

8. Defendants rate hospitals for a fee, knowing that without that "A" rating, the hospitals they rate will never receive the funding from Medicare that they seek. This gives LeapFrog and the co-defendants carte blanche on what it charges hospitals. Despite never even walking into the hospitals that they rate, they provide this "A" rating not for the patients use in determining what hospital to go to, but for the hospital, for a fee, with money on their mind. It is done at the expense of the patient, not the protection of them.

As the co-defendant admits in her own letter to the Plaintiff, they did not have data for 2012, and yet provides a new "A" rating just days after writing a letter of support to the Plaintiff, only changing her position and providing a "new rating" without that data after Plaintiff went public with what he perceived as LeapFrog's support of his efforts against the hospital.

## COUNT TWO

### (Negligent Misrepresentation)

9. The Defendants promote their ratings to patients. The goal in that promotion is to give them a sense of security about the hospital they are about to choose. What LeapFrog does not admit in

those promotions, is that they never actually step foot into the hospitals they rate. This is misleading, and a total misrepresentation. Plaintiff's mother bought into that misrepresentation and it cost her her life.

## COUNT THREE

### (False Advertising)

10. Plaintiff claims that under The Lanham Act (Section 43a), that Defendants are falsely advertising, while claiming non-profit status, ratings to hospitals they have never stepped foot in. The ratings do not say "This is an A rated hospital that we have never walked into," it says "This is an A rated hospital." Period. But "A" rated means they mail a questionnaire to the hospital they are rating, are paid a fee by that hospital, receive the questionnaire back in the mail, and rate them based on their own answers to the printed questions. Even the American Hospital Association (AHA) is against this methodology (**Exhibit I**). The exhibit states "...We believe no one should use it (the rating) to guide their choice of hospitals...". Unfortunately for my mother, she did.

## COUNT FOUR

### (WRONGFUL DEATH)

11. Because Helen Bousquet chose The Holy Family Hospital to go to, based on the "A" rating that has turned out to be bogus and money-driven, she is deceased. The LeapFrog is responsible for their part in this, because LeapFrog misled led her into a hospital that the hospital's very own nurses protested just days after LeapFrog provided the hospital with a new "A" rating. One would ponder as to how a hospital whose own nurses are protesting for lack of staff, whom have filed more than 1,000 nurse complaints against their employees (in just the past one year), could possibly receive an "A" rating from The Girls Club, never mind an organization that claims it is an oversight ratings system of hospitals nationwide, including in Hawaii.

## COUNT FIVE

**(Intentional Infliction of Emotional Distress, Loss of Love, Loss of Consortium)**

12. Due to the actions of CEO LeapFrog and it's co-defendant Leah Binder, who led Plaintiff to believe she was "siding with him," and "supporting him," and then to intentionally ignore him, immediately offer the "A" rating she was claiming via phone to Plaintiff was "not accurate" and that "The Holy Family Hospital was using their rating to promote themselves in a manner that they shouldn't,"...but then providing them a new "A" rating just days after writing the Plaintiff a "Letter of Support" as exhibited in this Complaint, the plaintiff has suffered Intentional Infliction of Emotional Distress of which evidence, through discovery, will only further confirm.

Plaintiff intends to have his grief therapist, a professor at Harvard University, testify to this fact. Defendants have made plaintiff distrustful of others, unable to sleep, and at one point even suicidal.

The actions of co-defendant Binder "toyed" with the Plaintiff, gave him the impression that she was supporting him (at one point emailing him "Your mother would want us to talk," and then ignored him and provided the hospital with a new rating, despite her admission in her letter to Plaintiff that she hadn't even received 2012 data yet in order to have been able to do so without an act of fraud. You simply cannot state you don't have data for 2012 in order to provide a hospital a rating, then magically find some just days after Plaintiff went public with the co-defendants letter of support.

**COUNT SIX**

**(Conspiracy To Commit Fraud)**

13. Plaintiff believes that after he went public with LeapFrog's "Letter of Support" as exhibited in this complaint, the phones rang off the hook with calls from the hospital, and those in charge of its PR department. It's for that reason that an emergency "A" rating was issued just days after Plaintiff was provided a letter of support by the very individual quoted in the "new rating."

## CONCLUSION

Plaintiff contends that he, and his mother, would not have chosen to go to The Holy Family Hospital, a Steward Health Care System Hospital owned by Cerberus Capital Management, had it not been for the misleading and fraudulent rating of LeapFrog Group and the other Defendants. Cerberus Capital Management owns Steward Health Care System, who owns Holy Family Hospital, and as all of Cerberus Capital Management owned hospitals are rated by LeapFrog Group, there is clearly an agreement between those two in order to prove said ratings.

Helen Marie Bousquet, had she known the falsity of the ratings provided by Leap Frog Group, would not have chosen that hospital, and Plaintiff has since learned that the ratings are bought and paid for and have no substance. If you pay the bill, you get the rating. Patients, like Plaintiff's mother, was unaware of that fact. Plaintiff's mother would not have chosen this hospital, nor would Plaintiff as her son, had they known the reality that is currently not disclosed by these Defendants.

Patients considering "A" rated hospitals by companies that never walk into those hospitals, have a right to know this information.

## RELIEF

Plaintiff files suit for $25 MILLION DOLLARS against the Defendants for the reasons stated above.

_____
BRIAN EVANS

June 28th, 2013